United States District Court
Southern District of Texas
**ENTERED**
January 09, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| GEMINI INSURANCE COMPANY, § § Plaintiff. § § V. § § INDEMNITY INSURANCE § COMPANY OF NORTH AMERICA, § § Defendant. § | CIVIL ACTION NO. 4:20-cv-03889 |

## **OPINION AND ORDER**

Pending before me are two fully briefed, dueling motions for summary judgment. Plaintiff Gemini Insurance Company ("Gemini") has filed a Motion for Partial Summary Judgment (*see* Dkt. 34), to which Defendant Indemnity Insurance Company of North America ("IINA") has responded (*see* Dkt. 52), and Gemini has replied (*see* Dkt. 54). IINA has filed a Motion for Summary Judgment (*see* Dkt. 37), to which Gemini has responded (*see* Dkt. 49), and IINA has replied (*see* Dkt. 55). In support of these motions, the parties have filed a number of appendices and supplements. Having reviewed the briefing, the record, and the applicable law, Gemini's Motion for Partial Summary Judgment (*see* Dkt. 34) is **DENIED**, and IINA's Motion for Summary Judgment (*see* Dkt. 37) is **GRANTED**.

## **BACKGROUND**

This case concerns the tragic death of Yesenia Espinoza ("Espinoza"). Espinoza died in a December 2017 workplace accident at a hydrocarbon processing facility being built by ExxonMobil Oil Corporation ("Exxon") in Beaumont, Texas. To build the facility, Exxon hired numerous contractors, including Bechtel Oil, Gas and Chemicals, Inc. ("Bechtel"). Bechtel, in turn, hired subcontractors, one of which was Echo Maintenance, LLC ("Echo"). Espinoza was employed by Echo at the time of her death. Espinoza's surviving family members filed suit against Bechtel and Echo in state court in Jefferson County, Texas ("the Underlying Litigation").

IINA defended Echo in the Underlying Litigation pursuant to a workers' compensation and employer's liability ("WC/EL") policy that IINA issued to Echo. IINA issued a similar WC/EL policy to Bechtel ("Bechtel's Policy"), but IINA declined to defend Bechtel in the Underlying Litigation on the grounds that Bechtel's Policy applied only to Bechtel's employees and Espinoza was not a Bechtel employee. Instead, Gemini defended Bechtel in the Underlying Litigation as a potential additional insured pursuant to a commercial general liability policy that Gemini issued to Echo. Gemini ultimately settled the claims brought against Bechtel.

In November 2020, Gemini brought this lawsuit against IINA, alleging that IINA breached its contractual obligations under Bechtel's Policy. Gemini seeks to recover the attorney's fees and expenses it incurred in defending the Underlying Litigation, as well as the settlement payment made on behalf of Bechtel to resolve the Underlying Litigation. Gemini also seeks declaratory relief along the same lines.

Gemini now seeks partial summary judgment establishing that IINA was required to defend and indemnify Bechtel in the Underlying Litigation pursuant to the terms of Bechtel's Policy, and that Gemini is entitled to reimbursement. In turn, IINA seeks summary judgment that Bechtel's Policy does not cover the claims asserted against Bechtel in the Underlying Litigation and that Gemini take nothing.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Evidence is viewed "in the light most favorable to the non-moving party, and the movant has the burden of showing this court that summary judgment is appropriate." *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009) (citations omitted).

## ANALYSIS

### A.  CHOICE OF LAW

State law governs substantive matters in this diversity action. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Texas is the forum state, so I apply the choice of law rules of Texas. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "Except when a contract with a valid choice of law clause applies, Texas courts apply the substantive law of the state with the most significant relationship to the particular dispute at issue." *Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc.*, 175 S.W.3d 284, 291 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984); RESTATEMENT (SECOND) OF CONFLICT OF LAWS ("Restatement") §§ 6, 188 (1971)). Bechtel's Policy does not contain a choice of law clause and the parties have not addressed choice of law, yet they have briefed only Texas law. The Restatement provides that the validity of insurance contracts like the one at issue here is "determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 (1971). Bechtel's Policy was issued to Bechtel at its Texas address to provide workers' compensation insurance pursuant to Texas law for Bechtel workplaces in Texas. *See* Dkt. 38-8 at 6, 11. Accordingly, I find that Texas law governs this dispute.

### B.  PRINCIPLES OF INSURANCE LAW

"To determine whether the insurer has an obligation to defend a lawsuit, Texas courts apply the 'eight corners' rule." *Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 612 (5th Cir. 2012). Under the eight corners rule, "the scope of an insurer's duty to defend against a lawsuit is determined exclusively by the allegations in the pleadings and the language of the insurance policy." *Id*. "[T]he duty to defend does not turn on the truth or falsity of the plaintiff's allegations." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 311 (Tex. 2006). "[I]n case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." *Nat'l Union Fire*

3

*Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). The court must focus *only* on the pleading's *factual* allegations. *See id.* at 142. It is inappropriate to consider "the legal theories asserted," "look outside the pleadings, or imagine factual scenarios which might trigger coverage." *Id.*

"Texas rules of contract interpretation control in this diversity case. Under Texas law, the same rules apply to the interpretation of insurance contracts as apply to the interpretation of other contracts." *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001) (citations omitted). "Terms are given their ordinary meaning unless the insurance policy shows that the words were meant in a technical or different sense." *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 423 (5th Cir. 2010) (cleaned up). I find the following guidance from the Fifth Circuit particularly salient:

> The rules in the Lone Star State for interpreting insurance policies have been around a *long* time. The paramount rule is that courts enforce unambiguous policies as written. We must honor plain language, reviewing policies as drafted, not revising them as desired. If an insurance contract, just like any other contract, uses unambiguous language, that's that. Our first task, then, is purely legal: deciding whether the Policy is ambiguous. And under Texas contract law, "ambiguity" means more than "lack of clarity." A policy is not ambiguous merely because different parties—or different judges—offer conflicting interpretations. If its wording can be given a definite meaning, then it is not ambiguous. A policy is only ambiguous if, giving effect to all provisions, its language is subject to two or more reasonable interpretations. Also, ambiguity must be evident from the policy itself; it cannot be fashioned via parol evidence. Finally, because we presume that contracting parties intended all that they enacted, we examine the entire contract in order to harmonize and give effect to all provisions so that none will be meaningless.

*Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 673–74 (5th Cir. 2020) (cleaned up). With these principles in mind, I turn to question of whether IINA had a duty to defend Bechtel in the Underlying Litigation.

C. **BREACH OF CONTRACT CLAIM**

   1. **Duty to Defend**

   I first address the breach of contract claim for failure to defend the Underlying Litigation.

### a. Allegations that the Injured Employee Was Employed "by Bechtel" Are Required to Trigger the Duty to Defend

Any duty IINA may have to defend Bechtel arises from Part Two of Bechtel's Policy, which provides, in relevant part:

**PART TWO – EMPLOYERS LIABILITY INSURANCE**

**A. How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.
2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.
3. Bodily injury by accident must occur during the policy period.
4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.
5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

Dkt. 38-8 at 74. "You" refers to Bechtel.[1] The state listed in Item 3.A. of the Information Page is Texas. *See id.* at 6. The policy period is January 1, 2017 to 12:01 a.m. on January 1, 2018. *See id.* Accordingly, Part Two provides employers liability insurance for bodily injury arising out of and in the course of an injured employee's employment by Bechtel during the year 2017, provided that the employment is necessary or incidental to Bechtel's work in Texas.

Bechtel's Policy also provides Voluntary Compensation Insurance through an endorsement (the "VCEL Endorsement") that states, in relevant part:

---

[1] Bechtel's Policy states that "You are insured if you are an employer named in Item 1 of the Information Page." Dkt. 38-8 at 73. Item 1 of the Information Page lists the named insured as Bechtel. *See id.* at 6.

5

**VOLUNTARY COMPENSATION AND EMPLOYERS LIABILITY COVERAGE ENDORSEMENT**

This endorsement adds Voluntary Compensation Insurance to the policy.

**A. How This Insurance Applies**

This insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must be sustained by an employee included in the group of employees described in the Schedule.
2. The bodily injury must arise out of and in the course of employment necessary or incidental to work in a state listed in the Schedule.
3. The bodily injury must occur in the United States of America, its territories or possessions or Canada and may occur elsewhere if the employee is a United States or Canadian citizen temporarily away from those places.
4. Bodily injury by accident must occur during the policy period.

**F. Employers Liability Insurance**

Part Two (Employers Liabiity Insurance) applies to bodily injury covered by this endorsement as though the State of Employment shown in the Schedule were shown in Item 3.A. of the Information Page.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**Schedule**

**Employee**

EMPLOYEES OF A CONTRACTOR WITH WHOM THE NAMED INSURED HAS EXECUTED A WRITTEN CONTRACT TO PROVIDE WORKERS COMPENSATION INSURANCE IN CONNECTION WITH THE DESIGNATED PREMISES.

Dkt. 38-8 at 13–14.

Gemini argues that the VCEL Endorsement extends employers liability coverage to any injured "employees of Bechtel's contractors with whom Bechtel had a written contract to provide workers compensation insurance" (*i.e.*, a "scheduled employee"). Dkt. 34 at 10. This argument hinges on Paragraph F of the VCEL Endorsement. Gemini contends that "Paragraph F . . . expressly stat[es] that Part Two 'applies' to bodily injury covered by the endorsement" and that the "term 'applies' in Paragraph F is unambiguous." Dkt. 54 at 3–4. IINA counters that "the VCEL Endorsement's employer's liability provision references and incorporates the terms and conditions of Part Two of the IINA Policy, and Part Two conditions coverage on injuries to employees in the course of employment by Bechtel." Dkt. 52 at 11. Accordingly, IINA contends that "employer's liability coverage in any circumstance requires the axiomatic employment relationship, and a defense would require an allegation of that relationship." *Id.* at 12. Thus, the real question is whether

6

an employment relationship between a scheduled employee and Bechtel must be alleged to trigger Part Two's coverage.

Without explicitly saying so, Gemini's position seems to be that the VCEL Endorsement nullifies Part Two's requirement that the bodily injury "arise out of and in the course of the injured employee's employment by [Bechtel]." Dkt. 38-8 at 74. *See* Dkt. 34 at 12–14 (arguing that Espinoza's injury is covered by the VCEL Endorsement without addressing whether Espinoza had an employment relationship with Bechtel); Dkt. 49 at 12 ("IINA owed Bechtel a duty to defend the Leatherwood Lawsuit, regardless of whether or not the pleadings specifically alleged that Bechtel was [Espinoza]'s direct employer or had the right to control her job duties."); Dkt. 54 at 5 ("Under IINA's definition, [Espinoza] was Bechtel's 'employee.' . . . It is irrelevant whether or not she was directly employed by Bechtel."). Accordingly, I understand Gemini's position to be this: it is either unnecessary that Espinoza be employed "by [Bechtel]," Dkt. 38-8 at 74, or Espinoza's employment relationship with Bechtel is automatically inferred because Espinoza is a scheduled employee.[2] It seems to be Gemini's contention that the only thing that matters is that Espinoza is an "employee" as defined by the VCEL Endorsement. I find this to be an unreasonable proposition.

Texas law requires me to "examine the entire contract in order to harmonize and give effect to all provisions so that none will be meaningless." *Pan Am Equities*, 959 F.3d at 674. Further, under Texas law "an endorsement cannot be read apart from the main policy, and the added provisions will only supersede the previous policy terms to the extent they are truly in conflict." *Mesa Operating Co. v. Cal. Union Ins. Co.*, 986 S.W.2d 749, 754 (Tex. App.—Dallas 1999, pet. denied). Accordingly, I cannot read out Part Two's requirement of an employment relationship if that requirement can be harmonized with the VCEL Endorsement. IINA contends "that the VCEL Endorsement provides Bechtel with voluntary compensation options if it

---

[2] I assume, without deciding, that the allegations in the Underlying Litigation show that Espinoza is a scheduled employee as that term is defined by the VCEL Endorsement.

7

borrows employees from referenced contractors." Dkt. 52 at 24 n.53; *see also* Dkt. 55 at 11 ("A scheduled [employee] could in some circumstances find himself or herself in the course and scope of work for Bechtel."). Gemini tellingly does not address IINA's borrowed employee argument in its reply. IINA's interpretation makes sense to me. In the context of borrowed employees,³ there could be circumstances in which Bechtel directs and controls the work of another contractor's employee such that Bechtel is the actual employer of that employee, despite not being the employee's direct employer. If the pleadings were to allege that Bechtel directed and controlled the injured employee's work, such that Bechtel was the employee's actual employer under the borrowed employee doctrine, then the conditions of coverage under *both* Part Two and the VCEL Endorsement would be satisfied. Accordingly, this a reasonable interpretation of Bechtel's Policy. Because it is the only interpretation before me that harmonizes Part Two and the VCEL Endorsement and affords each provision meaning, it is the interpretation that prevails.

Reviewing Bechtel's Policy as a whole⁴ reassures me that IINA's reading is correct. Throughout Bechtel's Policy, where an endorsement is meant to alter policy language, it says so explicitly. For example, the Maritime Coverage Endorsement explicitly changes Part Two using language like "A. **How This Insurance Applies** is replaced by the following"; "C. **Exclusions** is changed by removing . . . ."; and "D. **We Will Defend** is changed by adding . . . ." Dkt. 38-8 at 8. The same is true for the Texas Amendatory Endorsement. *See* Dkt. 38-8 at 46. In contrast, the VCEL Endorsement merely "adds" to the policy without expressly altering any of Part Two's

---

³ "An employee ceases to be an employee of his general employer if he becomes the 'borrowed employee' of another. One who would otherwise be in the general employment of one employer is a borrowed employee of another employer if such other employer or his agents have the right to direct and control the details of the particular work inquired about." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 537 (Tex. 2002) (quoting Comm. on Pattern Jury Charges, State Bar of Tex., TEX. PATTERN JURY CHARGES—MALPRACTICE, PREMISES & PRODS. PJC 52.2 (1997)).

⁴ Gemini attached only 11 pages of the full 95-page policy in support of its Partial Motion for Summary Judgment. *See* Dkt. 35-1. Bechtel's Policy is available in full as Exhibit H to IINA's Motion for Summary Judgment. *See* Dkt. 38-8.

8

requirements for triggering coverage. *Id.* at 13. Thus, I find as a matter of law that Bechtel's Policy unambiguously requires an allegation that a scheduled employee was employed "by Bechtel" to trigger IINA's duty to defend.[5]

### b. There Are No Allegations that Espinoza Was Employed "by Bechtel"

Having established that Espinoza's employment by Bechtel must be alleged to trigger IINA's duty to defend, I next look to see whether there are any allegations in the Underlying Litigation that would suggest such an employment relationship. The most Gemini points to are allegations "that Bechtel exercised and retained control over the worksite and the pipefitting work being performed by Ms. Espinoza"; "that Ms. Espinoza was doing work for Bechtel"; and "that Bechtel was liable for breaching a number of specific duties which are commonly associated with an employment relationship." Dkt. 34 at 10 (citing Dkt. 35-7 at 2–4 (Plaintiff's First Amended Petition[6]); Dkt. 35-8 at 3–5 (Original Petition in Intervention[7])). "The duty to defend is determined by consulting the latest amended pleading." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004). If the latest pleadings actually alleged "that Bechtel exercised . . . control over the . . . pipefitting work being performed by Ms. Espinoza," Dkt. 34 at 10, I might consider it a close call. However, a review of the pleadings in the Underlying Litigation reveals no such language. What the pleadings actually allege is that Bechtel "exercised and/or retained control over the worksite and the activities ongoing at the time of the fatal incident." Dkt. 35-8 at 3; *see also* Dkt. 35-7 at 3 (alleging that Bechtel was "in control of the operations and construction of the SCANfining unit"). These are merely allegations that Bechtel controlled Espinoza's work environment, not allegations that Bechtel was functioning as Espinoza's employer. Because there are no allegations that Bechtel directed the details of Espinoza's work, I cannot find that an employment

---

[5] Because I find Bechtel's Policy to be unambiguous, I do not reach Gemini's arguments regarding ambiguity or consider parol evidence.

[6] Plaintiff's First Amended Petition was filed by Zachery Leatherwood, Espinoza's husband, on behalf of himself and their two minor children.

[7] The Petition in Intervention was filed by Espinoza's parents.

relationship was alleged. *See BJB Constr., LLC v. Atl. Cas. Ins. Co.*, No. H-07-0157, 2008 WL 1836690, at *6 (S.D. Tex. Apr. 23, 2008) ("The court is not allowed to read anything into the underlying pleading or imagine factual scenarios, even in its search for potential coverage. Although [allegations regarding control of the workplace environment] may be considered related to employment in some situations, they also could be relevant to liability based on the condition of the work premises. The former is simply too big of a leap in a vacuum of employment language, especially when the latter is just as likely."), *aff'd*, 338 F. App'x 382 (5th Cir. 2009). This is especially true given that the pleadings contain explicit allegations that Espinoza was employed by Echo. *See* Dkt. 35-7 at 3 (alleging that Espinoza was "an employee of Defendant ECHO"); Dkt. 35-8 at 3 ("Deceased Plaintiff was employed by ECHO MAINTENANCE"). Because I find that there is no allegation that Espinoza was employed by Bechtel, I must also find that IINA had no duty to defend Bechtel in the Underlying Litigation.[8]

### 2. Duty to Indemnify

I next turn to Gemini's duty to indemnify claim. "An insurer must defend its insured if a plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008). Gemini advances two arguments in support of its indemnity claim. First, Gemini argues that Espinoza's injury is covered by the VCEL Endorsement because Espinoza falls within the Schedule's definition of "Employee." *See* Dkt. 34 at 12–14. This argument assumes that it is unnecessary that Espinoza was not employed by

---

[8] Because the absence of an allegation in the Underlying Litigation that Espinoza was employed by Bechtel is an independent and sufficient basis for finding that IINA did not have a duty to defend, I do not reach the parties' dispute about whether I can infer a written contract between Echo and Bechtel, a requirement to trigger coverage under the VCEL Endorsement. *See* Dkt. 34 at 11 ("The pleadings do not expressly state that a written contract was in place between Echo and Bechtel, but this can be reasonably inferred."); Dkt. 52 at 12–13 ("Gemini is incorrect in its suggestion that the eight corners rule requires that coverage should be inferred contrary to explicitly pleaded facts.").

Bechtel. For the reasons discussed above in Section C, IINA has no duty under Part Two unless the scheduled employee was employed "by [Bechtel]." Dkt. 38-8 at 74. Gemini does not contend that Bechtel was Espinoza's actual employer. Thus, Gemini's first argument fails.

Gemini next argues that Espinoza's injury is covered by Part Two because Bechtel is Espinoza's statutory employer under the Texas Workers' Compensation Act ("TWCA"). *See* Dkt. 34 at 14–17. There is no dispute that Bechtel was Espinoza's statutory employer under the TWCA. Rather, IINA argues that the statutory employer relationship is a "legal fiction" that Texas statutory and case law has clearly limited "only for purposes of the workers' compensation laws of this state." *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 642 S.W.3d 551, 559 (Tex. 2022) (quoting TEX. LAB. CODE § 406.123(e)). Gemini does not address *Maxim* in its reply brief and, wisely, appears to have abandoned this argument in its reply. *See* Dkt. 54 at 5 ("It is also irrelevant, in this case, whether statutory employment renders someone an 'employee' under a standard worker's compensation and employer's liability insurance policy."). Nevertheless, I note that IINA is correct. I cannot use Bechtel's statutory employment relationship under the TWCA as a substitute for the actual employment relationship required by Part Two. Because Bechtel was not Espinoza's actual employer, IINA has no duty to indemnify.

### 3. Subrogation

Last but not least, I discuss the subrogation issue. I need not decide whether Gemini is contractually or equitably subrogated to Bechtel's rights. Even if it were, Bechtel had no right to defense or indemnity from IINA. Accordingly, Bechtel, and thus Gemini, should take nothing from IINA.

### D. DECLARATORY JUDGMENT CLAIM

Gemini also asserts a declaratory judgment claim that mirrors its breach of contract claim. Notably, the Federal Declaratory Judgment Act "does not create any substantive rights or causes of action." *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996). Accordingly, if Gemini

11

cannot proceed on the breach of contract cause of action, the declaratory judgment cause of action also fails. *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 243 (5th Cir. 2014) (finding that because "declaratory judgment is remedial in nature" a determination that the underlying causes of action were properly dismissed "likewise warrants affirmance of the court's dismissal of [a] request for declaratory judgment").

## CONCLUSION

Gemini's Motion for Partial Summary Judgment (*see* Dkt. 34) is **DENIED**, and IINA's Motion for Summary Judgment (*see* Dkt. 37) is **GRANTED**. I will issue a separate final judgment.

SIGNED this 9th day of January 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE